IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEFAN WOODSON,

    Plaintiff,

    v.                                            Case No. 3:13CV134-REP

CITY OF RICHMOND, VIRGINIA, *et al*.

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR LEAVE TO AMEND

COMES NOW the Plaintiff, Stefan Woodson, by counsel, and in support of his Motion for Leave to Amend his Complaint to add as party Defendants several nurses who were employed by Defendant Correct Care Solutions, LLC ("CCS"), who the Plaintiff alleges were each individually deliberately indifferent to Plaintiff, and states as follows:

### PERTINENT BACKGROUND

This case arises out of a crippling heat stroke Plaintiff suffered on July 9, 2012 at the Richmond City Jail that Plaintiff alleges occurred due to the deliberate indifference of his Constitutional rights by many Defendants. An Amended Complaint was filed on March 13, 2013 to streamline Plaintiff's causes of action. This Court issued its Pre-trial Scheduling Order on June 18, 2013 and a Pre-trial Conference was held on August 21, 2013. During the discovery period, additional parties were implicated, and on December 28, 2013, Plaintiff filed a Motion for Leave to File a Second Amended Complaint naming three deputies. (Pl.'s Mot. to Am. Dec. 28, 2013, ECF No. 62). On January 6, 2014 Plaintiff also filed a Motion to Continue & Enlarge all Deadlines. (Pl.'s Mot. to Continue, ECF No. 75). A phone conference was scheduled for January 10, 2014 at 2:30 p.m. for oral argument on the amendment issue. On January 10, 2014,

during the conference, Defendant CCS filed its Opposition to Plaintiff's Motion to Continue. (Def. CCS's Opp'n to Pl.'s Mot. to Continue ECF No. 80)

On January 9, 2014, the day prior to the telephonic hearing, counsel for Defendant CCS contacted counsel for Plaintiff to inform him that a nurses' log previously requested in discovery had suddenly been "found." It is notable that counsel for CCS had previously represented, on the record, that this log had been "disposed of" (Evangelist Dep. 56:16-20, Dec. 18, 2013, Ex. A). Defendant CCS first produced a redacted version of this log at 5:00 p.m. on January 9, 2014, after the close of discovery and the day prior to the hearing on Plaintiff's Motion. (Ex. B). During the phone conference the Plaintiff informed the Court of these recent events and of Plaintiff's intention also to name individual nurses whose conduct was implicated by the newly found and produced nursing logs. By Order dated January 10, 2014, the Court granted Plaintiff Leave to Amend to name the new deputy Defendants identified in his Motion. (Order, Jan. 10, 2014, ECF No.83). In light of the Order granting leave to amend, the Court also continued the pending trial date and all other deadlines, and asked the parties to confer concerning a new Scheduling Order. (Id).

## ARGUMENT

As all previously set deadlines have been suspended by the Court in light of the previously granted amendment, no pre-trial scheduling order is in effect. "[M]otions to amend… in effect, operate to change the scheduling order." Cordance Corp. v. Amazon.com, Inc., 255 F.R.D. 366, 371 (D. Del. 2009). At this time the Court has not yet issued a new pre-trial scheduling order. As such, the Court should apply the more liberal amendment standard of Rule 15(a). See Foman v. Davis, 371 U.S. 178, 182 (1962). However, even if the Court finds that this is not the case, there is ample good cause to allow the amendment under the analysis required

under Rule 16(b). Fed.R.Civ.P. 16(b).

Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend should be freely granted "in the absence of ... undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman, 371 U.S. at 182. When, however, a motion to amend is presented after the time provided for the amendment by the court's scheduling order, a motion to amend implicates Rule 16(b). See, e.g. Rassoul v. Maximus, Inc., 209 F.R.D. 372, 373 (D. Md. 2002). Rule 16(b) requires a demonstration of "good cause" before the schedule can be amended to allow further amendment of the pleadings. Fed.R.Civ.P. 16(b). Thus, when a motion to amend a pleading implicates both Rule 15(a) and Rule 16(b), it is necessary to consider first whether a plaintiff satisfies the "good cause" standard of Rule 16(b) before deciding whether the plaintiff satisfies the [somewhat] more liberal standard of Rule 15(a). Id. (quoting Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D.W.Va. 1995)). In analyzing the burden of showing "good cause", this Court has previously held, "[w]hile the good cause standard is more stringent than the interest of justice standard…it appears that, at least where, as here, a case is in the final trial preparation stage and discovery has closed, the analytical approach should be essentially the same under either standard." Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union, 254 F.R.D. 274, 278 (E.D. Va. 2008).

### A. Since no Pre-trial Scheduling Order is Now in Effect, Whether to Grant Leave to Amend Should be Analyzed under Rule 15(a).

The good cause standard of Fed.R.Civ.P. Rule 16(b) only applies when there is a scheduling order in place, and the deadline for amendment set forth in the scheduling order has passed. See, e.g., Rassoul, 209 F.R.D. at 373. As of January 10, 2014 this Court granted Plaintiff

Leave to File a Second Amended Complaint and granted Plaintiff's Motion to Continue Trial Date & Enlarge Deadlines, ordering the parties to "confer and present the Court with a new trial schedule." (Order, ECF No. 83). As such, the Court should only consider the Foman factors set out above, and liberally grant Plaintiff leave to add the nurses as party Defendants. No party will experience undue prejudice, and this amendment is far from futile.

### 1. Plaintiff Communicated his Intentions to Amend to the Court at the First Opportunity.

Throughout the discovery process Plaintiff was unable to obtain any evidence to corroborate his position that the nurses employed by CCS failed to take Mr. Woodson's temperature as required by Dr. Moja's express written order of July 5, 2012. Plaintiff specifically questioned three of the nurses about this order during their depositions. Nurse Evangelist testified that she never saw the note and was never given it. (Evangelist Dep. 51:15-52:25, Ex. A). Nurse Williams testified that she saw the note on July 5, 2012, but testified that it was not her responsibility to take Mr. Woodson's temperature. (Williams Dep. 16:24-17:8, Dec. 5, 2013, Ex. C). Nurse Porter testified that she worked lockup on 9th Street and was not providing nursing services at the Jail facility where Plaintiff was housed after processing. (Porter Dep. Dec. 9, 2013, Ex. D, 58:15-58:19). Dr. Moja also testified during his deposition that he had no recollection whether the nurses had disobeyed his orders or not. (Moja Dep. 180:13-186:8, Dec. 11, 2013, Ex. E) Plaintiff also questioned Nurse Evangelist on December 18, 2013, specifically about Dr. Moja's order and learned for the first time of the existence of a log which would have each temperature recorded in it. Counsel for CCS represented during that deposition that the log had been "disposed of"[1] (Evangelist Dep. 53:20-55:24, Ex. A).

---

[1] Plaintiff is unaware of exactly what CCS's counsel knew or knows concerning the log at the time of Nurse Evangelist's deposition or now. However, it is telling that once Plaintiff moved for a continuance, alleging, *inter alia*, spoliation on the part of CCS, miraculously, the "disposed of" log reappeared. Also troubling, is to this day

4

The first concrete piece of evidence that supported Plaintiff's position that the newly named nurses failed to follow the July 5, 2012 order of Dr. Moja was the set of logs produced on January 9, 2014 -- 6 days after discovery closed. In fact, Defendant CCS belies the strength of its opposing position when it states that this log does nothing except **"corroborat[e] Plaintiff's position"** that the nurses did not perform their duty. (Def. CCS's Opp'n to Pl.'s Mot. to Continue at 3, ECF No. 80)(emphasis added). Corroboration of the Plaintiff's position is the precise purpose of discovery, and precisely why Plaintiff was seeking this log. Any delay in bringing this amendment is due to CCS's horribly late disclosure of this critical piece of evidence.

### 2. There was no Undue Delay or Dilatory Motive as Plaintiff Requested Leave to Amend within 24 Hours of Receiving the Log.

Plaintiff has acted neither in bad faith nor with a dilatory motive in requesting leave to amend. Plaintiff received the supposedly-destroyed "Nurse's Log" on January 9, 2014, and brought it to the Court's attention the very next day during the January 10, 2014, phone conference. The Plaintiff also informed the Court of his intention to name the Nurses as party Defendants. Prior to that, despite Plaintiff deposing three nurses and requesting the log through discovery, no direct evidence identifying specific nurses who neglected Mr. Woodson was available. As soon as this evidence became available, the Plaintiff acted. The only delay regarding this amendment is due to CCS's inexplicable delay in producing the log, and the time and attendance records of the Nurses involved. To date, the time and attendance records still have not been provided by CCS. Plaintiff's only motive in bringing this amendment is to be fully compensated for his injuries from all appropriate Defendants. Given that leave to amend has already been granted to name new deputy Defendants, adding the nurses at the same time as

---

despite discovery requests and multiple emails and letters, no time and attendance logs of the involved Nurses have been provided, although they most definitely exist, and have been sought.

the deputies will not cause any additional delay and is in the interests of judicial economy and justice.

### 3. No Defendant Will be Unduly Prejudiced nor Will This Amendment be Futile.

"In determining whether the granting of an amendment would be prejudicial, courts are frequently guided, *inter alia*, by the following considerations: the good faith of the party seeking the amendment, and the extent to which there has been an undue delay in proffering the amendment." Smithfield Foods, 254 F.R.D. at 278 (internal citations omitted). As discussed above, there has been no undue delay in proffering this amendment. The Plaintiff has acted in good faith by bringing it to the attention of the Court at his first opportunity. Moreover, as all deadlines must be rescheduled pursuant to the addition of the deputy Defendants, it benefits all parties to the litigation to add the nurse Defendants at the same time.

As evinced by the nursing log which was produced on January 9, 2014 at 5:00 p.m., 6 days after the close of discovery, and as confirmed by counsel for Defendant CCS's admission during the phone conference on January 10, 2014, Stefan Woodson's temperature was never re-taken after it had been determined that his temperature was 102.3 degrees on July 5, 2012. Even though the nurses had been expressly ordered, in writing, by Dr. Moja to take Plaintiff's temperature during the evening shift on July 5, 2012, and again during the morning shift on July 6, 2012, no further temperature readings were ever taken. Each nurse thereafter, having observed that the temperature order had not been followed, had a duty to follow up, which they simply ignored (Third Am. Compl., Ex. F, ¶¶ 36, 83, 100-102, 105-106, 109, 117, 162-165). Plaintiff has viable claims against the nurses employed by CCS and should be granted leave to amend to add them as party Defendants.

6

### B.   Plaintiff's Motion to Amend, if Necessary, Satisfies the Good Cause Standard of Fed.R.Civ.P. 16(b).

For amendments sought "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) (affirming the trial court's refusal to grant an amendment because the plaintiff failed to provide the court with any basis whatsoever to find good cause). "The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." Cordance Corp. v. Amazon.com, Inc., 255 F.R.D. 366, 371 (D. Del. 2009) (finding good cause where plaintiff sought leave to amend shortly after being able to satisfy the Rule 9(b) pleading with particularity requirement). Not only does good cause exist in this case, but it is Defendant CCS's post-discovery production of the nurses' log, coupled with the non-production of the electronic time and attendance records[2] that has caused the delay in the proposed amendment. See, e.g., Stewart v. Coyne Textile Services, 212 F.R.D. 494, 497 (S.D.W.Va. 2003) (finding the Rule 16(b) good cause standard satisfied where delay in filing motion to amend was due to defendant's late responses to plaintiff's discovery requests).

Plaintiff was diligent in attempting to ascertain factual material that would allow Plaintiff

---

[2] Nurse Evangelist indicated during her December 18, 2013 deposition that CCS maintains a separate time log from the one produced by Defendant Woody in discovery:

Q   And how is that clock-in procedure?

A   We have a swipe card. And we come through the front. We walk to the medical unit, which is up on the third floor. We go to the medical unit. We swipe it. And then we go and start counting the carts.

Evangelist Dep. 45:18-23. Despite multiple requests, Plaintiff has yet to receive these additional time logs.

7

to state viable claims against the potential Defendants during discovery. Plaintiff requested electronic time and attendance records of the various nurses on duty which to this day have not been produced. Plaintiff attempted to ascertain whether Plaintiff's temperature was ever retaken through the deposition testimony of Dr. Moja and 3 nurses, and, remarkably, not one of them knew whether the temperatures were taken or not. Plaintiff actually did discover, on December 18, 2013, the existence of the nurses' log during the deposition of Nurse Evangelist, but was immediately informed by CCS's counsel that it had been "disposed of." On the eve of the January 10, 2014 phone conference with the court Plaintiff learned that these logs had not been destroyed. The very next day Plaintiff informed the Court of his intention to move for leave to amend to add the nurses as party Defendants. As such, if this Court does find that the good cause standard should be applied, the Court should nevertheless grant Plaintiff's Motion to Amend and allow the nurses to be added as party Defendants.

## CONCLUSION

At this time no scheduling order is in place, as the Court's Order granting leave to amend vacated the existing scheduling order. (Order, ECF No.83). As a result, the Court should apply the liberal amendment standard of Rule 15(a). Accordingly, The Court should grant Plaintiff's Motion for Leave to File a Third Amended Complaint under that standard. If the Court should find that the more stringent standard of Rule 16(b) applies, Plaintiff has demonstrated good cause does exist due to post discovery deadline disclosure of the nurses' log by Defendant CCS. Therefore, the Court should grant Plaintiff's Motion for Leave to Amend regardless of whether the Court applies the liberal standard of Rule 15(a), or the more stringent standard of Rule 16(b).

**Respectfully submitted,**
**STEFAN WOODSON**

_____/s/_____

8

Seth R. Carroll (VSB No. 74745)
Benjamin M. Andrews (VSB No. 77824)
Elyse H. Stiner (VSB No. 84501)
Geoff McDonald & Associates, P.C.
8905 Fargo Road
Richmond, Virginia 23229
804-888-8888 (t)
804-359-5426 (f)
scarroll@mcdonaldinjurylaw.com
bandrews@mcdonaldinjurylaw.com
estiner@mcdonaldinjurylaw.com
**Counsel of Plaintiff Stefan Woodson**

# **C E R T I F I C A T E**

I hereby certify that a true copy of the foregoing was emailed this 13th day of January, 2014 to:

Edward J. McNelis, III, Esq.
Isaac A. McBeth, Esq.
Rawls, McNelis & Mitchell, P.C.
211 Rocketts Way, Suite 100
Richmond, VA 23231
Phone: (804) 344-0038
Fax: (804) 782-0133
emcnelis@rawlsmcnelis.com
imcbeth@rawlsmcnelis.com
*Attorneys for Motsumi Moja, M.D. and Correct Care Solutions, LLC*

Jeff W. Rosen, Esq.
Jeffrey A. Hunn, Esq.
Pender & Coward
222 Central Park Avenue
Virginia Beach, VA 23462
(757) 490-3000/(757) 502-7351
jrosen@pendercoward.com
*Attorneys for C.T. Woody, Jr., Sheriff*

David P. Corrigan, Esq.
Jeremy D. Capps, Esq.
Maurice S. Fisher, Jr., Esq.
Harman, Claytor, Corrigan & Wellman
P. O. Box 70280
Richmond, Virginia 23255
Phone: (804) 747-5200
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

Kyle R. Elliott, Esq.
Office of the Richmond City Attorney
Richmond, Virginia 23219
Phone: (804) 646-7946
Fax: (804) 646-7939
Kyle.elliott@richmondgov.com
*Attorneys for City of Richmond*

_____/s/_____
Seth R. Carroll