IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



STEFAN WOODSON,

    Plaintiff,

v.                     Civil Action No. 3:13cv134

CITY OF RICHMOND,
VIRGINIA, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the court on PLAINTIFF'S TIME-SENSITIVE MOTION FOR LEAVE TO AMEND HIS FOURTH AMENDED COMPLAINT BY INTERLINEATION (Docket No. 577). For the reasons set forth below, the motion will be denied.

## BACKGROUND

On March 1, 2013, Woodson filed a Complaint against the Correct Care Systems, LLC ("CCS") and other defendants, alleging several violations of his constitutional rights under the Eighth Amendment and 42 U.S.C. §1983. Docket No. 1. Later, Woodson filed an Amended Complaint. Docket No. 3. With leave of the Court, Woodson later filed a Second Amended Complaint (Docket No. 88), a Third Amended Complaint (Docket No. 119), and a Fourth Amended Complaint ("FAC") (Docket No. 187). All of these

complaints asserted a claim under against CCS under the Eighth Amendment by way of 42 U.S.C. § 1983, alleging that CCS violated Woodson's constitutional rights while Woodson was imprisoned in the Richmond City Jail (the "Jail") where CCS provided medical care therein pursuant to a  contract with the City of Richmond. Id.

In Count V, Woodson alleges that CCS was deliberately indifferent to his need for medical care. FAC, ¶168.  CCS filed for summary judgment on November 21, 2014.  Oral argument on the motion was held on January 7, 2015.  At oral argument, counsel for CCS argued that Woodson had failed to produce sufficient evidence to survive summary judgment on the allegation that CCS had "failed to establish any meaningful policy or procedure to prevent or ameliorate foreseeable harm to inmates, including Mr. Woodson, as a result of dangerously high temperatures in the Jail." FAC, ¶38.  In response to this argument and questioning from the Court, counsel for Woodson attempted to phrase the claim against CCS as an allegation that it had "an unwritten policy of not following a written policy", namely, the sentinel and critical care event policy discussed in the briefing on CCS's motion for summary judgment.

In rebuttal, counsel for CCS argued that the "unwritten policy of not following a written policy" theory of liability was not alleged in the FAC and that the omission was a basis for

2

disregarding the revised theory without considering the merits. Counsel for Woodson argued that the theory actually was presented in ¶122 of the FAC, which alleged:

> Defendant CCS had a duty to ensure through its policies, practices, and procedures that measures were in place to prevent and adequately treat heat-related and other serious medical needs of inmates at the Jail, and to ensure that serious medical needs were not ignored. Defendant CCS further had a duty to implement programs to audit the quality of and ensure the improvement of the care provided by its agents at the Jail.

FAC at ¶122. That paragraph does not present a claim that CCS has "an unwritten policy of not following a written policy" namely the sentinel and critical care event policy. When asked where in the FAC Woodson had alleged that CCS had breached the alleged duty alleged in ¶122, Woodson's counsel could not provide a citation.

On January 8, 2015, one day after oral arguments on CCS's motion for summary judgment, Woodson filed a motion to amend the FAC "by interlineation." Docket No. 577. In that motion, Woodson sought to add two new paragraphs of allegations against CCS. These paragraphs stated:

> ¶ 170 vi. Defendant CCS breached its duty to maintain a policy of investigating heat related illnesses and thereby prevent or ameliorate foreseeable harm to inmates, including Mr. Woodson;

> vii. Defendant CCS breached its duty to Mr. Woodson by deciding to not investigate heat related illnesses and thereby prevent or ameliorate foreseeable harm to inmates, including Mr. Woodson.

CCS has responded in opposition to Woodson's motion (Docket No. 653) and Woodson has filed a reply in support (Docket No. 670). The motion is now ripe.

## DISCUSSION

A party may amend his complaint one time as a matter of course before the defendant files a responsive pleading. Fed. R. Civ. P. 15(a). Once a defendant files a responsive pleading however, Fed. R. Civ. P. 15(a)[1] states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In the Fourth Circuit "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (internal citations omitted). "Whether an amendment is prejudicial will often be determined by the nature

---

[1] CCS contends that the more stringent "good cause" standard of Fed. R. Civ. P. 16(b)(4) applies in this case. Because Woodson's motion must be denied even under the less stringent 15(a) standard, it is unnecessary to conduct the "good cause" analysis.

of the amendment and its timing. A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant and is offered shortly before or during trial. An amendment is not prejudicial...if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Id. at 426-27 (internal citations omitted).

CCS argues that the proposed amendment should not be allowed under Rule 15(a) because it is prejudicial. Specifically, it argues that, had Woodson pled this theory in his first five complaints or sought this amendment sooner, CCS would have drafted its motions for summary judgment differently, would have made additional motions in limine, and would have designated expert testimony to address the theory at trial. Docket No. 653 at 4-6. Woodson, however, responds that the proposed amendments are merely clarifications of what was already alleged in the FAC and would require no additional discovery, motions, or experts. Specifically, Woodson contends that "there is no prejudice to CCS because the proposed amendment merely conforms the existing 1983 claim against CCS to evidence produced in discovery and litigated by the parties subsequent to plaintiff's filing of the Fourth Amended Complaint." Docket No. 670 at 5.

It has been recognized in the Fourth Circuit that a plaintiff cannot amend a complaint to present a new or revised claim in response to a defendant's motion for summary judgment. Harris v. Reston Hosp. Center, LLC, 520 Fed. App'x. 938 (4th Cir. 2013). In Harris, the Fourth Circuit upheld a district court's refusal to consider a new legal argument at the summary judgment stage "because...asserting a new legal theory for the first time in opposing summary judgment amounted to constructive amendment of the amended complaint and thus unfairly prejudiced the defendant." Id. at 946. The Court of Appeals went on to explain that "constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant." Id. In U.S. ex rel. DRC, Inc. v. Custer Battles, LLC, 472 F. Supp. 2d 787 (E.D. Va. 2007), the district court similarly held that plaintiff's attempt "well after the close of discovery [in response to a motion for summary judgment]...to effect a constructive amendment of the complaint...would seriously undermine the fairness to the litigation and unfairly prejudice the defendants." Id. at 795-96.

Woodson has attempted to do that which Harris and Custer Battles say he cannot. Although Woodson contends that his proposed amendments are mere "clarifications" of allegations contained in the FAC, an inspection of those allegations shows

that the proposed amendments have little, if anything, in common with those in the FAC wherein Woodson alleges that CCS assumed a duty to "provide Mr. Woodson and all other inmates and detainees with constitutionally appropriate access to medical care, constitutionally adequate medical are, and constitutionally timely medical care...[and] to provide a standard of care as outlined" in the contract between itself and the City." (¶121). Additionally, he alleges that CCS "had a duty to ensure through its policies, practices and procedures that measures were in place to prevent and adequately treat heat-related and other serious need of inmates...[and] to implement programs to audit the quality of and ensure the improvement of the care provided to by its agents at the Jail." ¶122. CCS allegedly breached these duties by "failing to provide necessary, adequate, and timely medical care to Mr. Woodson" (¶5); "failing to establish any meaningful policy or procedure to prevent or ameliorate foreseeable harm to inmates including Mr. Woodson, as a result of dangerously high temperatures in the Jail" (¶38); "failing to develop adequate, appropriate, and practical medical guidelines and/or policies and/or procedures for use by the nurses and other medical personnel at the Jail" (¶90); failing to meet standards set in the contract between CCS and the City of Richmond (¶82); and failing to train employees on any policies that were adopted (¶91).

Woodson now seeks to add two additional paragraphs alleging that CCS breached its duty to maintain a policy of investigating heat related illnesses and breached its duty to Woodson by not investigating prior heat related illnesses.  In justification, Woodson contends that these additional paragraphs are so related to the allegations of the FAC as to constitute the same legal theory or claim.  That is incorrect.  Woodson's allegations in the FAC revolve around CCS's alleged failure to provide adequate care, to establish procedures, and to train CCS staff in the procedures that were established.  While Woodson does state that CCS had a "duty to implement programs to audit the quality and ensure the improvement of the care provided", he does not allege anywhere in the FAC that this duty was violated by CCS or that the breach of that duty caused the injuries alleged by Woodson.

To allow Woodson to amend the FAC in the manner that he has requested would be to allow him to plead a new claim in an effort to defeat summary judgment.  Moreover, CCS is correct that, if the new claim is added, it would raise a new legal theory that would require additional fact gathering.  And, it is offered shortly before trial.  Woodson's motion is the classic example of a prejudicial amendment as given by the Fourth Circuit and therefore cannot be allowed.

**CONCLUSION**

For the reasons set forth above, PLAINTIFF'S TIME-SENSITIVE MOTION FOR LEAVE TO AMEND HIS FOURTH AMENDED COMPLAINT BY INTERLINEATION (Docket No. 577) will be denied.

It is so ORDERED.


_____/s/_____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:  February 10, 2015