

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEFAN WOODSON,

    Plaintiff,

v.                          Civil Action No. 3:13cv134

CITY OF RICHMOND,
VIRGINIA, et al.,

    Defendants.

### MEMORANDUM OPINION

This case is before the Court on Stefan Woodson's ("Woodson") Motion to Determine Value of GMA's Claim of Lien (Docket No. 816). For the reasons that follow, this motion will be denied.

### BACKGROUND

On July 9, 2012, Woodson suffered severe injuries while confined as an inmate in the Richmond City Jail. Thereafter, he filed this action naming numerous defendants. Shortly before trial, the parties reached a compromise settlement. A brief look at the evolution of the case will help to set the background for this motion.

The action was filed on March 1, 2013 by Seth R. Carroll and Benjamin M. Andrews who were associates in the law firm, Geoff McDonald & Associates, P.C. ("GMA"). Those lawyers filed

an Amended Complaint on March 13, 2013.  Much activity occurred in the case over the ensuing year and, during that time, Woodson was represented by Carroll and other lawyers in GMA.  On January 14, 2014, Carroll, Andrews, and five other lawyers employed by GMA left GMA en masse.  The last pleading listing Carroll and Andrews as GMA lawyers was filed on January 16, 2014 (Second Amended Complaint, Docket No. 88), after the Court granted a previously filed motion.  From then on, neither GMA nor any of its lawyers were involved in the case.  On January 28, 2014, a routine Consent Order was filed and listed Carroll as counsel for Woodson, but identified his law firm as Commonwealth Law Group.  Andrews was also listed as counsel for Woodson, but his law firm was identified as The Halperin Law Center.  On January 30, 2014, Jonathen E. Halperin noted an appearance on behalf of Woodson.

Woodson was referred to Carroll, who was then an associate at GMA, by a lawyer not affiliated with GMA.  On October 1, 2012, Woodson executed a Personal Injury Retainer Agreement with GMA and agreed to pay the firm a forty percent (40%) contingency fee, plus all costs incurred in the course of the action. Docket No. 817-1.  On October 23, 2012, Carroll executed a Compensation Agreement with GMA, wherein Carroll agreed that, if "any client elects to have his/her contingency fee case go with [Carroll]" after Carroll quit working at GMA, "GMA [would] be

entitled to 75% of the amount of the contingency fee specified in the contingency fee agreement" between the client and GMA for "settlement, verdict, or [other recovery] within a six (6) month period immediately following the Cessation Date, or if a continuance of the trial of any such case occurs for any reason within the First Recovery Period."[1]  Id. at 3.  Carroll was thereafter assigned primary responsibility for the Woodson case.

The records now shows that, after the six attorneys left GMA on January 14, 2014, Carroll started his own firm with other former GMA employees (Commonwealth Law Group) and Andrews joined The Halperin Law Center.  Id.  On January 21, 2014, Woodson executed a "Choice Letter", electing to have his case moved with Carroll to Commonwealth Law Group.  Docket No. 817-3.  Woodson then executed a retainer agreement with Carroll.  Docket No. 825 at 9.  On January 30, 2014, Woodson "executed a fee agreement with [The Halperin Law Center] because of Woodson's belief that Halperin was more established with more experience and resources."  Id.  The retainer agreement between Woodson and The Halperin Legal Center agreed on a thirty-nine percent (39%) contingency fee.[2]

---

[1]  Andrews, who was also employed at GMA executed the same agreement on October 29, 2012.  Docket No. 820-1.

[2]  Halperin and Carroll have represented to the Court on a conference call that the retainer agreement also contained a clause wherein the attorneys fully indemnified Woodson against

On February 6, 2014, GMA sent a Notice of Lien for attorneys' fees to David Corrigan, who represented the City of Richmond against Woodson, who, by then, was represented by Carroll, Andrews, and Halperin.   Docket No. 817-5.   That letter requested that "100% of any and all attorney's fees and costs advanced be sent directly to Geoff McDonald and Associates so that the same may be apportioned according to an employment contract between this firm and the departing attorney (Seth Carrol)."   Id.   Carroll and Andrews were sent copies of that letter.

On February 13, 2015, the parties settled Woodson's federal civil rights action.   On February 19, 2015, Geoffrey McDonald's counsel sent to all counsel in Woodson's case a letter providing notice of a lien for attorney's fees, pursuant to Va. Code Ann. § 54.1-3932.   Docket No. 817-6.   The letter stated that, pursuant to a retainer agreement executed by Woodson and GMA and a Compensation Agreement between Carroll and GMA, "[t]he Attorney's Lien of GMA would be seventy-five percent (75%) of the entire forty percent contingent fee, together with costs advanced."   Docket No. 817-6 at 3.

On April 6, 2015, GMA filed a complaint against Woodson's lawyers and their firms in the Circuit Court of Henrico County.

---

the chance that the contingency fee amount is found to be the forty percent (40%) fee called for in Woodson's contract with GMA.

Docket No. 820-4. The State complaint makes several claims against those lawyers, including breach of contract, tortious interference with contract, statutory business conspiracy, common law conspiracy, and unjust enrichment. Id. The State complaint asks for a declaratory judgment on the entitlement to legal fees paid under the settlement agreement in Woodson's federal civil rights case. Id. Woodson is not a defendant in the State case against the lawyers. On April 15, 2015, Woodson filed this motion seeking a determination of the value of the lien that was filed under Va. Code Ann. § 54.1-3932.

## DISCUSSION

Both parties have addressed the merits of the motion in their filings, but GMA has asserted that the Court does not have subject matter jurisdiction. Of course, if there is no case or controversy, there is no subject matter jurisdiction. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Thus, the question of whether the Court has subject matter jurisdiction must be addressed first.

## I.   Standing

The first argument that GMA makes against the existence of subject matter jurisdiction to adjudicate Woodson's motion is that Woodson does not have standing to assert the claim made in it. GMA's position is that Woodson "has no interest in the

value of GMA's claimed lien [because] GMA's claim arises from a separate employment contract with Woodson's attorneys through which . . . GMA is entitled to a portion of the fee received by Woodson's attorneys." Docket No. 820 at 9. According to GMA, it "claims no entitlement to the settlement funds paid to Woodson (or to be paid to Woodson), only to his lawyer's fee. Thus, Woodson has no interest whatsoever in the fee dispute." Id.

Woodson responds that he does, in fact, have an interest in the dispute between his lawyers and GMA, stating that he "has standing to challenge any assertion of a lien against his settlement."[3]  Docket No. 825 at 7. That is said to be so, because, "[i]f GMA were seeking enforcement of an attorney's fee lien against Woodson or his settlement, Woodson would have standing to seek a determination of the value of the lien." Id. Further, Woodson posits that, "[w]hatever contractual arrangements may or may not exist among the payers of the settlement, other counsel, and Woodson, Woodson and his settlement (along with the payers and other counsel) are responsible to GMA for any valid and properly noticed attorney's fee lien." Id. (citing Va. Code Ann. §54.1-3932.) That

---

[3] Although Woodson addresses the issue of jurisdiction in his original memorandum, he does so only in the context of whether this Court should extend supplemental jurisdiction to the issue. He does not discuss whether he has standing. Docket No. 817.

contention is difficult to follow, but it seems to depend upon the notion that, simply because the lawyer's fees are to be paid out of the settlement proceeds, Woodson necessarily has standing without regard to whether the settlement payout that he receives is adversely impacted.

The United States Constitution's "case-or-controversy" requirement limits the jurisdiction of the federal court system. U.S. Const. Art III §2. To fall within the constitutionally imposed limits on jurisdiction, a plaintiff suing in federal court must have standing to pursue his or her claim.

Over the years, the law of standing has been developed in such a way that it now consists of three elements. "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendants and not the result of the independent action of some third party not before the court. Third, it must be 'likely', as opposed to merely 'speculative', that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations omitted). The party invoking federal jurisdiction bears the burden of proving that

these three requirements are satisfied. <u>Id.</u> at 560; <u>Warth v.
Seldin</u>, 42 U.S. 490, 518 (1975).

Woodson alleges that he has an interest in the
determination of the value of GMA's lien. Docket No. 825 at 6.
There are two types of interests that Woodson appears to claim:
financial and conceptual.

If Woodson has a financial interest, he has standing to
bring this motion because, "[i]n the case of economic or
physical harms, of course, the 'injury in fact' question is
straightforward." <u>Hein v. Freedom from Religion Found., Inc.</u>,
511 U.S. 587, 642 (2007). However, based on the information in
this record, it does not appear that Woodson has a financial
interest in the outcome of the determination of the fee dispute
that his motion asks the Court to adjudicate.

To begin, GMA has represented that it "claims no
entitlement to the settlement funds paid to Woodson (or to be
paid to Woodson), only to his lawyer's fees." Docket No. 820 at
9. On that point, GMA contends that Woodson will receive the
exact same amount of money under the settlement agreement
without regard to the resolution of the dispute between GMA, its
former associates, and Halperin. Woodson does not say
otherwise. Nor could he because Woodson has received either
directly, or through the annuity trust provided in the
settlement agreement, all of the funds to which he is entitled

under the settlement. Thirty-nine percent (39%) of the settlement amount was withheld and, the Court is told, is now in escrow. That represents the contingent fee called for by the retainer agreement between Woodson, Halperin and Carroll.[4] And, under that retainer agreement, the lawyers have agreed to indemnify Woodson against the difference between the thirty-nine percent (39%) fee called for by that agreement and the forty percent (40%) fee called for by the agreement between Woodson and GMA.[5]

Thus, on this record Woodson has no financial stake in the resolution of the fee dispute between the lawyers. Therefore, he will sustain no injury in fact no matter how that dispute is resolved.

It appears from the briefing that Woodson also is arguing that he will suffer a more ideological/emotional type of injury because of this lien. Specifically, he seems to contend that he could be injured by the fact that the attorney's fees from his settlement would not be paid, in their entirety, to the lawyer that he selected to represent him.

Unfortunately, the parties have not extensively briefed this notion. And, indeed, it only appears in a roundabout way

---

[4] Halperin and Carroll represented that fact to the Court in a telephone conference on April 15, 2015. Woodson does not dispute the representation.

[5] Id.

in the one paragraph of Woodson's reply brief that deals with standing. However, it is well-established that "general emotional distress is insufficient to establish a legal violation" and confer standing. American Tradition Institute Environmental Law Center v. U.S. E.P.A., 2013 WL 428452, at *4 (E.D. Va. 2013) (citing Humane Soc. of U.S. v. Babitt, 46 F.3d 93, 98 (Dist. D.C.) ("[G]eneral emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes.")). Further, the Supreme Court has held that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Article III." Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc., 454 U.S. 464, 485 (1982). Thus, Woodson's attempt to demonstrate standing based on his dissatisfaction with an outcome that would favor GMA is without legal merit.

In sum, Woodson has failed to meet the "injury-in-fact" component of the standing test. For that reason, his motion must be denied.

## II. Supplemental Jurisdiction

Assuming that Woodson had established standing, the Court nonetheless would decline to exercise supplemental jurisdiction

under 28 U.S.C. § 1367 because there is no nexus between Woodson's federal civil rights claim that affords subject matter jurisdiction in this case and the fee dispute between the lawyers which is a matter of State contract and tort law. Taylor v. Kelsey, 666 F.2d 53 (4th Cir. 1981); Adams v. Allied Chem. Corp., 503 F. Supp. 253, 255 (E.D. Va. 1980). For that additional reason, Woodson's motion must be denied.

### CONCLUSION

For the foregoing reasons, the Motion to Determine Value of GMA's Claim of Lien (Docket No. 816) will be denied.

It is so ORDERED.

_____  /s/  _REP_  _____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: May _13_, 2015